759 So.2d 225 (2000)
William Baynard MEISSNER
v.
Marie de Villier Roy MEISSNER.
No. 99-681.
Court of Appeal of Louisiana, Third Circuit.
April 5, 2000.
Writ Denied June 16, 2000.
*226 Robin A. Anderson, Lake Charles, LA, Counsel for Plaintiff/Appellee.
Karl E. Boellert, Lake Charles, LA, Counsel for Defendant/Appellant.
*227 Court composed of HENRY L. YELVERTON, ULYSSES GENE THIBODEAUX, and MICHAEL G. SULLIVAN, Judges.
SULLIVAN, Judge.
Marie de Villier Roy Meissner appeals a judgment dismissing her reconventional demand for partition of community property and ordering her to reimburse her former husband, William Baynard Meissner, $12,735.38 in shipping and storage fees. For the following reasons, we reverse and remand.

Facts and Procedural History
William and Marie are both citizens of the United States, William having been born in Boston, Massachusetts and Marie in Lake Charles, Louisiana. They met while they were living in Brazil and while each was married to someone else. After obtaining divorces in the Dominican Republic, they married in New Orleans in 1983. When questions arose about whether Brazil would recognize that marriage, they obtained Brazilian divorces and underwent a second marriage ceremony in 1988. While they lived in Brazil, William worked as a partner in the United States law firm of Baker and McKenzie. He later accepted employment with Citibank Corporation and had moved to New York shortly after he filed the present action for divorce, although he testified that this move was temporary and that he expected to return to Brazil one day. In Meissner v. Meissner, 97-903, pp. 1-3 (La.App. 3 Cir. 2/18/98); 707 So.2d 1040, 1041-43, writs denied, 98-735, 98-753 (La.4/24/98); 717 So.2d 1180, we set forth with greater particularity the parties' marital history and this case's procedural history:
William and Marie Meissner were married on November 29, 1983, in New Orleans, Louisiana. Soon after the New Orleans marriage the couple moved to Rio de Janeiro, Brazil, where they established their matrimonial domicile. Both parties had been previously married but had divorced their prior spouses by means of questionably valid legal proceedings in the Dominican Republic. To protect the status of their marriage to each other, they each subsequently obtained Brazilian divorces from their former spouses, then remarried in a Brazilian ceremony in 1988.
In 1990 Marie left Brazil and came to the United States to attend school in New York. For one reason or another, after attending school in New York, Marie did not return to Brazil but instead moved to Lake Charles, Louisiana. [In 1991, Marie filed for divorce in Calcasieu Parish, but that action was dismissed on several exceptions filed by William.]
On March 1, 1993, William filed for divorce in Brazil. On June 12, 1995, Marie signed a procuration and agreement which gave her Brazilian attorneys the power to represent her in the Brazilian divorce proceedings and to effectuate certain agreements as to matters incidental to the divorce.
In August 1995 William filed another divorce action, this time in the Fourteenth Judicial District Court for the Parish of Calcasieu, Louisiana, where Marie lived. Marie answered the Louisiana suit and filed a reconventional demand praying for a divorce and incidental relief, including alimony and a partition of the community property which she alleged existed between the parties. On September 4, 1995, the Brazilian court rendered a judgment of divorce.
William then dismissed his Louisiana suit and filed an exception of res judicata to Marie's reconventional demand in the Louisiana proceedings, arguing that because of the judgment of divorce in Brazil, and because all matters incidental to the divorce were adjudicated by a Brazilian court, all matters pending in the Louisiana court were res judicata and should be dismissed. The district court agreed and signed a judgment in William's favor holding that all claims filed in the Louisiana court, including *228 the claims for alimony pendente lite, permanent alimony, and division of the community property regime, were res judicata and dismissed Marie's claims.
Upon Marie's appeal, this court affirmed the preclusive effect of the Brazilian judgment as to the divorce and alimony but held that the trial court erred in granting William's exception of res judicata as to the division of community property. We then remanded the case for trial of the partition. Meissner, 707 So.2d 1040. On remand, the trial court granted William's motion to apply Brazilian law to all issues in these proceedings. In an unpublished decision, we denied Marie's application for supervisory writs on that ruling, finding no showing of irreparable harm and that Marie had an adequate remedy through appeal. Meissner v. Meissner, 98-1297 (La.App. 3 Cir. 9/17/98).
After a trial, which included the testimony of a Brazilian legal expert, the trial court once again found that the Brazilian judgment had partitioned all assets of the parties' former community. Recognizing William's reimbursement claim under Brazilian law for monies spent "defending" the separate property of his former spouse, the trial court also ordered Marie to reimburse William for the cost of shipping certain items from Brazil to the United States. Although not necessary to its ruling, the trial court further found that, under Brazilian law, (1) the 1983 marriage in New Orleans was invalid and (2) the parties' former community terminated as of their de facto separation in 1991 rather than on the date of their Brazilian divorce in 1995.
On appeal, Marie argues that the trial court erred (1) in finding that the Brazilian court partitioned the community property, notwithstanding this court's mandate to partition that property; (2) in nullifying the parties' 1983 marriage; (3) in terminating the parties' former community as of 1991 rather than 1995; (4) in applying Brazilian law rather than Louisiana law, as required by La.Civ.Code art. 3526; and (5) in recognizing William's reimbursement claim.

Opinion

The Brazilian Decree
In our prior opinion, we found that the trial court erred in concluding a judgment of the Brazilian court, which incorporated an agreement between William and Marie, evidenced a settlement of their community property claims. Briefly summarized, the judgment of the Brazilian court granted the parties a divorce, "homologated by decree" their agreement, and "extinguished for lack of subject matter" actions for the offering of alimony, alimony, and the "provisional remedy and inventory of property." The agreement provided that Marie waived any alimony that William "might have to pay her," and that William would pay Marie $14,084.00 upon homologation of the divorce and would be allowed to withdraw funds deposited in certain banks in Brazil. As a consequence of the agreement, Marie's action for alimony and William's actions for the offering of alimony and for the "provisional remedy for the inventory of property" would be "extinguished for lack of subject matter." Our decision that these documents were not res judicata was based on several considerations, including the presumption that, absent a showing to the contrary, a foreign state's law is the same as Louisiana's, the absence of any agreement pertaining to a partition, and testimony at the hearing that a community property dispute continued after the rendition of the judgment.
On remand, and after hearing the testimony of Professor Sergio Bermudes, a professor of civil procedure at the Law School of the Pontifical Catholic University of Rio de Janeiro, Brazil, the trial court repeated its finding "that the community property partitioning of the two parties was completed and homologated in Brazil, as previously stated." This ruling apparently surprised all parties, as William had not re-filed an exception of res judicata *229 and the pretrial briefs did not address this issue. Moreover, we find the trial court erred in permitting relitigation of this issue based on Brazilian law when neither party at the first hearing chose to introduce evidence of how a Brazilian court would have interpreted those documents. Our prior ruling acquired the force of res judicata upon the supreme court's denial of William's writ application. La.Code Civ.P. art. 2166.
Even if we were to revisit this issue, we find that Professor Bermudes' testimony did not completely address the concerns expressed in our prior opinion. The professor testified that the Brazilian court homologated a partition because "there had been a transaction under the name accordo." He explained that an action for divorce has an object that is "naturally bigger than the alimony, the two alimony actions and the inventory actions.... It involves partition and so forth." Yet, Professor Bermudes also testified that in an action for a "direct divorce," i.e., as in the present case where the parties did not first obtain a judicial separation, Brazilian law would not require the community to be partitioned upon the judgment of divorce. When questioned about the purpose of the $14,000 payment in the parties' agreement, Professor Bermudes responded that the payment was not related to past-due alimony, as Marie had testified in the first hearing. However, the professor also continued:
This is an agreement. It is a divorce agreement. It is a settlement, you know, so that the divorce has been granted. It is a sum of money established by the parties. I don't know for what reason they have established this. They don't say why they have established that amount.

(Emphasis added.)
"The doctrine of res judicata is stricti juris; any doubt concerning application of the principle of res judicata must be resolved against its application." Kelty v. Brumfield, 93-1142, p. 7 (La.2/25/94); 633 So.2d 1210, 1215. In light of Professor Bermudes' testimony that a partition need not be completed at the time of the "direct divorce" and the uncertainty about the $14,000.00 payment in the agreement, we cannot conclude that the Brazilian decree is res judicata as to Marie's action to partition the community.

Conflicts of Laws
The threshold question governing Marie's remaining assignments is the trial court's decision that Brazilian law applied to all aspects of these proceedings. In reviewing that ruling, we do not have the benefit of the trial court's analysis, as the record does not contain any reasons for judgment on that issue. We are guided, however, by the Civil Code's conflicts of laws provisions, effective January 1, 1992.
La.Civ.Code art. 3515 sets forth the general and residual rule of our conflicts policy: except as otherwise provided, an issue is to be decided by "the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." In identifying that state, we are to look to "the relationship of each state to the parties and the dispute" and to certain policies, including those of "upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state." Id. As explained in the comments, Article 3515 contemplates an issue-by-issue analysis that may result in the laws of different states being applied to different issues in the same dispute.

Marital Property
Specific to this controversy are the conflicts rules governing the classification and distribution of marital property. La.Civ.Code art. 3523 (emphasis added), the residual article, provides:

Except as otherwise provided in this Title, the rights and obligations of spouses with regard to movables, wherever situated, acquired by either *230 spouse during the marriage are governed by the law of the domicile of the acquiring spouse at the time of acquisition.

William argues that this article mandates the application of Brazilian law to the partition of their former community property. He points out that he was the acquiring spouse of all marital property, which consisted solely of movables and which was acquired exclusively while he was domiciled in Brazil. Marie, however, contends that because she was domiciled in Louisiana at the time of the Brazilian divorce, all conditions are present for the application of the more specific provision found in La.Civ.Code art. 3526 (emphasis added):
Upon termination of the community, or dissolution by death or by divorce of the marriage of spouses either of whom is domiciled in this state, their respective rights and obligations with regard to immovables situated in this state and movables, wherever situated, that were acquired during the marriage by either spouse while domiciled in another state shall be determined as follows:
(1) Property that is classified as community property under the law of this state shall be treated as community property under that law; and
(2) Property that is not classified as community property under the law of this state shall be treated as the separate property of the acquiring spouse. However, the other spouse shall be entitled, in value only, to the same rights with regard to this property as would be granted by the law of the state in which the acquiring spouse was domiciled at the time of acquisition.
William argues that Article 3526 cannot apply because it presupposes that the spouses had at one time established a Louisiana matrimonial domicile. He interprets the phrase, "upon ... divorce of the marriage of spouses either of whom is domiciled in this state," to mean that a spouse who remains in Louisiana may continue to litigate here, even though the other spouse has left the state. To construe the article otherwise, he argues, would turn Louisiana into a "divorce mill," subjecting its court system to forum shopping. In support of this position, he cites the discussion of La.Civ.Code arts. 2334 and 2329 in SPAHT & HARGRAVE, 16 LOUISIANA CIVIL LAW TREATISE: MATRIMONIAL REGIMES (2d ed.1997), § 9.1, pp. 562-63:
[F]or the matrimonial regimes law of Louisiana to apply proof is required that both spouses have moved into and acquired a domicile in Louisiana. The historical evolution of the predecessor legislation supports the conclusion that if only one spouse moves into Louisiana and establishes a domicile here, the Louisiana law of matrimonial regimes, and even more particularly the legal regime of the community of acquets and gains, is not applicable.
We find that William's position is not supported by either the conflicts articles or the treatise that he cites. As Comment (c) to Article 3523 provides, "[I]f at the time the marriage terminates one or both spouses are domiciled in Louisiana, Article 3526, infra, becomes a rule of distribution that displaces this Article." In discussing Articles 3523 and 3526, the authors in SPAHT & HARGRAVE, § 9.3, p. 570 (footnotes omitted) explain:
Article 3526 creates an exception to the general principle where (1) there is a termination of the community, or dissolution by death or by divorce (even if spouses live under a separation of property regime) and (2) movables were acquired during the marriage by either spouse while domiciled in another state....
The exception to the general rule provided for in Article 3523 is triggered by a "significant event" when one of the spouses is domiciled in Louisiana and Louisiana possesses adjudicatory jurisdiction. As the comments explain, the *231 article if applicable envisions a two-step process: (1) classification of the property in accordance with the law of Louisiana as either "community" [so-called "quasi-community" property] or "separate" property and (2) distribution of property under subparagraph (2) of Article 3526.
Additionally, William's concerns about forum shopping are addressed by the question of jurisdiction. As explained in Comment (a) to Article 3526:
Obviously, ... in order for this Article to become applicable, Louisiana must possess adjudicatory jurisdiction. Moreover, since the application of this Article inevitably affects the property rights of the parties, Louisiana must have either in rem jurisdiction or in personam jurisdiction over the parties affected.... In cases of divorce or termination of the community, Louisiana must have jurisdiction over both spouses in order to render any judgment affecting their property rights.
In the present case, William consented to the jurisdiction of the Louisiana courts when he filed his action for divorce in 1995. Although the divorce was eventually granted by the Brazilian court, we find that Louisiana retained jurisdiction over the partition action. As explained in Heggins v. Heggins, 590 So.2d 647, 649 (La. App. 3 Cir.1991), writ denied, 592 So.2d 1300 (La.1992), "Although partition of the community is an incident to the dissolution of a marriage, the right to partition, if not exercised at the time of the divorce, survives the divorce. The action for a partition is not abated by the divorce." Based on the above, we find that the trial court erred in ruling that Brazilian law applied to the classification and distribution of the parties' former marital property: the "triggering event" of Article 3526 is present, and Louisiana has personal jurisdiction over the parties and "adjudicatory" jurisdiction over this controversy.

Dates of the Marriage and of the Community
Article 3526 directs us to classify property "acquired during the marriage" as either separate or community under the law of this state. Thus, before we can determine what items of property are to be classified, we must first determine the duration of the marriage. The trial court found that the 1983 Louisiana marriage was invalid under Brazilian law; therefore, the parties were not validly married (and the community did not come into existence) until the couple's second ceremony in 1988. The trial court also determined that the community terminated in 1991 upon the parties' de facto separation, per Brazilian jurisprudence, rather than on the effective date of the Brazilian divorce, as provided in the Brazilian Civil Code. On appeal, Marie argues that the trial court should have recognized the validity of the Louisiana marriage and should have decreed that the community terminated upon the finality of the Brazilian divorce, which was established by stipulation as October 11, 1995.
La.Civ.Code art. 3520(A) provides:
A marriage that is valid in the state where contracted, or in the state where the parties were first domiciled as husband and wife, shall be treated as a valid marriage unless to do so would violate a strong public policy of the state whose law is applicable to the particular issue under Article 3519.
Comment (b) to Article 3520 explains that the article espouses the principle of "favor matrimonii" or authorizing the validation of marriages that are valid either in the state where contracted or the state where the spouses were first domiciled as husband and wife. Thus, the party asserting the invalidity of the marriage must prove that: "(1) under Article 3519, the law of a state other than the one where the marriage was contracted or where the parties were first domiciled as husband and wife would have been applicable to the particular issue; and (2) that law would *232 invalidate the marriage for reasons of `a strong public policy'." Id.
In the present case, no one argues that Louisiana would not recognize the couple's 1983 marriage in New Orleans. William, however, contends that Brazil considers the marriage invalid because he and Marie failed to register, or homologate, their Dominican Republic divorce decrees with the Brazilian supreme court. (They did register their New Orleans marriage with the proper Brazilian authorities.) Professor Bermudes testified that Brazilian domiciliaries who had been validly married in Brazil must register their foreign divorce decrees with that country's supreme court. If this procedure is not followed, then Brazil would consider the Brazilian marriage to be intact. As Marie points out, however, Professor Bermudes did not cite or produce any Brazilian legal authority for this proposition. Professor Bermudes did cite Article 204 of the Brazilian Civil Code, which provides that a marriage celebrated outside Brazil is proved in accordance with the laws of the country where it is celebrated.
According to the comments to Article 3520, William must prove that Brazil is the state whose policies would be most seriously impaired if its laws were not followed on this particular issue. In identifying that state, La.Civ.Code art. 3519 (emphasis added) directs us to consider:
(1) the relationship of each state, at any pertinent time, to the dispute, the parties, and the person whose status is at issue; (2) the policies referred to in Article 3515; and (3) the policies of sustaining the validity of obligations voluntarily undertaken, of protecting children, minors, and others in need of protection, and of preserving family values and stability.
Although Professor Bermudes testified that Brazilian law has strong impediments against polygamy and incest, he did not explain how those policies would be violated if a Louisiana court would treat the 1983 Louisiana marriage as valid in this community property dispute. Brazil certainly has an interest in compliance with its divorce laws, and William and Marie, although United States citizens, were previously married to Brazilian domiciliaries. However, the present controversy does not involve their ex-spouses. Additionally, Professor Bermudes described a relatively simple procedure-registering a foreign divorce decree-through which a Brazilian domiciliary could obtain a divorce on grounds not otherwise available in that country. Based on the above, we do not find that Brazil's policies would be seriously impaired if Louisiana were to recognize a marriage celebrated in this state between United States citizens (one being a native of this state) in a dispute over movable assets acquired while the husband was employed by a United States law firm. Article 3519 also refers us to the policies of Article 3515, which include upholding the justified expectations of the parties and minimizing the adverse consequences of subjecting a party to the laws of more than one state. We further find that these policies would not be impaired, as William must have had a reasonable expectation that Louisiana's law would apply when he filed for divorce in this state. For these reasons, we find that the trial court erred in failing to recognize that the parties' former community came into existence on the date of their New Orleans marriage, November 29, 1983.
The trial court also concluded that the parties' former community terminated on August 28, 1991, the date that Marie filed for divorce in Calcasieu Parish after returning to Louisiana. (William had that action dismissed in 1992. He then filed for divorce on March 1, 1993, in Brazil, and the Brazilian court rendered a judgment of divorce on September 4, 1995.) The trial court based this conclusion on six Brazilian cases that fashioned an equitable remedy in certain circumstances by refusing to treat as community property goods that were acquired during the marriage but after the parties' de facto *233 separation. As Professor Bermudes explained, these cases recognized the principle that when the mutual assistance, cohabitation, and affection of the marriage has ceased, goods acquired by one spouse during the separation should not be divided as community. According to the professor, Marie's filing for divorce in 1991 was an indication of when their de facto separation began under these cases. Marie argues, however, that the six cited cases are not controlling because none of them concerned property acquired while the spouses were litigating their divorce or property claims. Instead, she contends, the cases cited by the professor involved one spouse, generally the spouse who deserted the other, seeking to share in goods that the other acquired during a separation of many years.
Professor Bermudes testified that the Brazilian Civil Code does not provide that the community regime terminates upon a de facto separation. Rather, the Civil Code provides that the legal community terminates when the judgment of divorce becomes res judicata. Nonetheless, the professor also pointed out that the Brazilian Code of Civil Procedure permits a party to a divorce to file a declaratory suit asking the court to recognize an early termination of the regime. In the present case, there is no evidence that William filed such a declaratory lawsuit. Given these codal provisions, we fail to see how Marie's filing for a divorce would invoke the equitable remedy of the de facto separation cases. Unlike the spouses in those cases, Marie and William actively litigated their divorce throughout their separation. In fact, it was William who dismissed Marie's 1991 suit, only to file his own in 1993. Even if we agreed with the trial court that the law of Brazil governs this issue, we would still find manifest error in the ruling that, under Brazilian law, the community terminated in 1991. William has failed to demonstrate that this case would not be governed by the Brazilian codal provision that the incidents of divorce take effect upon the finality of the judgment-which in this case was October 11, 1995.
However, our inquiry does not stop with a finding that under Brazilian law the parties' community did not terminate until October 11, 1995. Under Article 3526, we are not partitioning the Brazilian community; rather, that article directs us to classify and to distribute property "acquired during the marriage" as either community or separate under the law of this state. Louisiana, like Brazil, recognizes the inequity that would result if the community's existence were to continue throughout protracted litigation, but, unlike in Brazil, a party in Louisiana need not file a declaratory suit to terminate the regime before the divorce is granted. La. Civ.Code art. 159 (emphasis added) provides in part: "A judgment of divorce terminates a community property regime retroactively to the date of filing of the petition in the action in which the judgment of divorce is rendered." In the present case, the parties were divorced by judgment of the Brazilian court dated September 14, 1995. The petition for that action was filed on March 1, 1993. To comply with Article 3526's mandate that we classify property "acquired during the marriage" under Louisiana law, we find that the termination date of the community should be March 1, 1993. Therefore, property acquired during the marriage but before that date should be considered community, and property acquired after that date should be considered separate.

Partition
The parties proceeded to trial of the partition but pursuant to the trial court's ruling that Brazilian law applied to all issues. As a consequence of that ruling, William submitted a descriptive list that included only property acquired between 1988 and 1991 that would have been classified as community in Brazil. His list, therefore, excluded previously identified assets such as his pension plan, his equity as a partner is his law firm, and all household furnishings except a stereo. He also *234 identified three community debts having outstanding balances on August 24, 1991 and a reimbursement claim, with the net result of Marie owing him an equalizing payment of $26,819.38. Before the trial court ruled that Brazilian law would apply, William's counsel had submitted a memorandum listing the assets and outstanding debts as of March 1, 1993 that would have been classified as community in this state as well as answers to interrogatories also based upon Louisiana law. The trial court admitted the answers to interrogatories into evidence, but it did not admit the memorandum. When questioned about that memorandum on cross-examination, however, William stipulated that the information contained in it was accurate. In an attempt to prepare a record in the event that Louisiana law would apply, Marie submitted a descriptive list based upon the William's previous memorandum and his answers to interrogatories.
Both parties submit that this court may proceed with a partition on this record. We disagree. From these documents, it appears that the assets of the former community consisted of William's equity in the law firm of Baker and McKenzie, William's 401(k) plan with that firm that he rolled over into an IRA after he began working for Citibank; bank accounts, certificates of deposit, and household items. Because Brazilian law excludes the pension plan and firm equity as community assets, the parties did not prepare a record concerning the issues that the partition of these assets raise. Additionally, under La.R.S. 9:2801(4)(a), the trial court is directed to "value the assets as of the time of trial on the merits." Again, because of the constraints of the trial court's previous ruling, we find that the record inadequately complies with this provision. We, therefore, find it necessary to remand for a trial of the partition consistent with this opinion. Any stipulations that the parties made in the first trial shall be binding on remand.
The trial court also granted William's claim for reimbursement for the cost of shipping Marie her separate property as required by the Brazilian judgment. The basis for this claim was Professor's Bermudes' testimony that Brazil recognizes a spouse's right to reimbursement for sums spent "defending" the other spouse's separate property rights, with that claim subject to legal interest of six percent per annum. Because of our holding that this case is governed by Article 3526, we find that this portion of the trial court judgment must also be reversed.

Decree
For the above reasons, the judgment of the trial court is reversed in all respects and the case is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed to Appellee, William Baynard Meissner.
REVERSED AND REMANDED.